[No. 12645.   Department Two.   August 4, 1915.]

NATIONAL LUMBER & MANUFACTURING COMPANY, *Appellant*,

v. CHEHALIS COUNTY *et al.*, *Respondents.*[1]

TAXATION—ASSESSMENT—VALUATION—"MARKET" VALUE.   Rem. &
Bal. Code, § 9112, providing that property be assessed for taxation
at its true and fair value, defined to be what it is fairly worth in
money and that value at which the property would be taken in pay-
ment of a just debt from a solvent debtor, requires its assessment
at its market value.

SAME—ASSESSMENT—VALUATION—"MARKET" VALUE — EVIDENCE —
SUFFICIENCY.   An assessment of the personal property of a sawmill
company is not invalid as not based upon its "market" value, be-
cause the assessor and board of equalization adopted the "depre-
ciated" value as determined by an appraisal company upon consider-
ation of its present condition, replacement value, and present utility,
although owners testified that the market value, as shown by sales,
was much less than the depreciated value, where there was evidence
that the depreciated value furnishes a basis upon which banks ex-
tend credit and insurance companies pay losses and was what it
was worth to the owner and substantially the same as its market
value, and there was no clear evidence to overcome the conclusions
of the board of equalization, acting in a quasi judicial capacity, such
as a showing that the practical utility of the mill had been affected
by exhaustion of the timber supply, or the like.

Appeal from a judgment of the superior court for Che-
halis county, Irwin, J., entered February 4, 1915, upon
findings in favor of the defendants, dismissing an action to
secure the reduction of a tax, tried to the court.   Affirmed.

*Hogan & Graham* and *Bridges & Bruener*, for appellant.

*J. E. Stewart, Wm. E. Campbell*, and *A. Emerson Cross*,
for respondents.

MAIN, J.—The plaintiff brought this action for the pur-
pose of securing a reduction of the amount of a tax levied
upon certain personal property owned by it, and restrain-
ing the county and its officers from collecting more than the

[1]Reported in 150 Pac. 1164.

amount which had been tendered in full payment. This is one of nine cases brought for the same purpose. The other eight were prosecuted by different mill owners. After a trial upon the merits, the action was dismissed. From this judgment, the plaintiff appeals.

The facts are substantially as follows: The appellant, during the year 1913, and for some years prior thereto, was the owner of a sawmill plant located at Hoquiam, Washington, in Chehalis (now Grays Harbor) county. Prior to the year 1913, the appellant had an appraisement made of its plant by the General Appraisal Company of Seattle. This company is engaged in the business of appraising sawmills and other manufacturing plants, and has had an extensive experience in such work. In appraising the machinery of a sawmill plant, the General Appraisal Company finds the new replacement value, the depreciated value, and the insurable value; the depreciated value and the insurable value being the same, except in the insurable value there is not included those items of personal property which are not subject to be destroyed by fire, and, consequently, are not covered by insurance. In determining the depreciated value, the General Appraisal Company takes into consideration the condition of a particular article, the length of time it has been used, and whether or not it has become obsolescent, that is, whether the machine is useful or not, or whether it has been replaced by later inventions and more modern machinery. These appraisements made by the General Appraisal Company are admitted by both parties to the litigation to be correct and reliable.

The assessor, in making the assessment for the year 1913, did not have before him the appraisal. He sought to reach the same result by referring to an insurance policy which had expired a year or more previously. The assessor found the depreciated value of the machinery in the appellant's mill to be $265,200, and the assessable value to be $106,080. The assessable value was arrived at by taking forty per cent of

the depreciated value. Property throughout the county for the year mentioned was assessed at forty per cent of its true, actual, or market value.

During the year 1914, and before this cause was tried in the superior court, the county had employed the General Appraisal Company to appraise, for the purpose of taxation, all of the sawmills in the county. In this appraisement, the depreciated value of each mill was ascertained as of March 1, 1914. It is conceded that the value of the machinery in the appellant's plant was substantially the same on March 1, 1913, as it was on March 1, 1914. During the year 1914, a number of the mill companies employed the General Appraisal Company to ascertain the market value of their respective plants, claiming that the market value and the depreciated value were not the same.

The appellant, not being satisfied with its assessment for the year 1913, contested the same before the equalization board. This board reduced the assessable value from the amount above mentioned, to $76,500. This is a trifle less than forty per cent of the depreciated value of the machinery as found for the year 1914 by the General Appraisal Company; but, as above indicated, it was admitted that the depreciated value was the same in 1914 as the year previous. The assessed value, as fixed by the board for the year 1913, was a little less than forty per cent of the depreciated value of the machinery. The assessor believed the depreciated value to be the true or market value. The board of equalization entertained the same view. The reduction was made by the board because the means adopted by the assessor for determining the depreciated value had resulted in fixing a value greater than that sum. The use of the old insurance policy for the purpose of determining the depreciated value was responsible for the erroneous result arrived at by the assessor.

The appellant claims that the depreciated value of the machinery is not the same as the true or market value, and

that therefore its property is grossly overassessed. The respondent claims that the depreciated value is the true or market value. The question, then, here for determination is whether the depreciated value of the machinery, as found by the General Appraisal Company, is the same as the true or market value.

The statute, Rem. & Bal. Code, § 9112, is as follows:

"All property shall be assessed at its true and fair value in money. In determining the true and fair value of real or personal property, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made. The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor. . . ."

This statute requires that all property shall be assessed at its true and fair value in money. The true and fair value in money, as provided in the statute, is to be determined by "that value at which the property would be taken in payment of a just debt from a solvent debtor." Construing this statute in *Spokane & I. E. R. Co. v. Spokane County*, 75 Wash. 72, 134 Pac. 688, it was held that the measure of value mentioned in the statute when "reduced to its simplest terms, is 'market value.'" If, then, the depreciated value is not the same as the market value, the value of the appellant's property for purposes of assessment was measured by an arbitrary and erroneous standard. The inquiry must, therefore be directed to the determination of the question whether the depreciated value and the true or market value are in substance the same.

The president of the General Appraisal Company testified that the depreciated value, as fixed by his company, was the

basis which banks used in extending credit to mill companies, and insurance companies used in the adjustment and settlement of fire losses, and that it was what the property was worth to the owner. The manager of the appellant company, as well as the manager of one of the other companies which is contesting the assessment, testified that the true or market value of the machinery in the appellant's plant was very much less than the depreciated value, as fixed by the General Appraisal Company. The president of the General Appraisal Company also testified that the market value was not the same as the depreciated value, as the market value is "wrapped up in business affairs that it is not necessary to go into in any way for depreciated value." He also testified that the sales of mill properties would furnish a guide to the market value, and instanced a number of sales. The facts attendant upon the sales which were referred to, we think do not show that those sales were made at a price at which the property would be taken in payment of a just debt from a solvent debtor.

If the depreciated value furnishes a basis upon which banks extend credit, and insurance companies pay losses, and is what the property is worth to the owner, it is difficult to see why this is not the market value of the property and the value at which the property would be taken in payment of a "just debt from a solvent debtor." It is a well known fact that officers of banks when extending credit do not swell the value of property upon which credit is extended; and that insurance companies in settling fire losses do not pay more than the value of the property lost. The fact that the assessor started out to find the depreciated value, which he regarded as the true value, instead of taking the mandate of the statute requiring the determination of the true value, and using the depreciated value, together with all other relevant facts as evidence in determining the true value as fixed by the statute, would not necessarily make the assessment void if the amount of the assessment, even though arrived at

by erroneous methods, was the statutory value.   Some forty-six mills were assessed for the year 1913 in the same manner. Of these, nine or ten have contested the assessment.   While the fact that the other thirty-six have not complained of their assessment is not evidence that the depreciated value of the appellant's plant is its market value, it yet may be referred to as showing that the standard used was not generally, by mill owners, regarded as incorrect or unjust.   The board of equalization was of the opinion, as already stated, that the depreciated value corresponded to the market value. The trial court entertained the same view after a consideration of the evidence.   After reading carefully the appellant's abstract of the evidence, and the respondent's supplemental abstract, and a large part of the testimony as it appears in the statement of facts, we are of the opinion that the conclusion of the board of equalization, and the judgment of the trial court, are not overcome by the testimony in the record. The board of equalization acts in a quasi judicial capacity in making or equalizing assessments, and the evidence to overthrow its conclusions must be clear.   *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553.   Finding the new replacement value, and then deducting from this the amount of the depreciation, is one way of finding the actual value. The new replacement value, less the depreciation, would give the depreciated value.   *San Joaquin etc. Irrigation Co. v. Stanislaus County*, 191 Fed. 875; *Knoxville v. Knoxville Water Co.*, 212 U. S. 1.

These cases, it is true, are not tax cases.   But if the depreciated value is the measure of the actual value of the plants under consideration in those cases, there does not appear to be any reason why it should not be the measure of the actual or market value in the present case.   We do not want to be understood as holding that the depreciated value is a universal standard of actual or market value.   We only hold that, under the facts in the present case, the two standards are substantially coordinate.   If it had been shown by

the testimony that the timber tributary to the appellant's sawmill had all been exhausted, and that it would be necessary to remove the mill to some more advantageous location before it would be of practical utility, an entirely different question would be presented. Whitten, Valuation of Public Service Corporations, p. 43. The evidence in this case, however, does not show, or tend to show, that the timber tributary to the appellant's mill is either now, or likely to be exhausted in the near future.

The other eight cases above mentioned were argued in this court at the same time that the present case was argued, the same counsel appearing in all the cases. They are all determined by the holding in this case, and in deciding them, simply a reference will be made to this opinion.

The judgment will be affirmed.

MORRIS, C. J., ELLIS, FULLERTON, and CROW, JJ., concur.