[No. 12333.  Department Two.  August 20, 1915.]

HILLMAN'S SNOHOMISH COUNTY LAND AND RAILROAD
COMPANY, *Appellant*, v. COUNTY OF SNOHOMISH
*et al., Respondents.*[1]

TAXATION — ASSESSMENT — EXCESSIVE VALUATION — FRAUD — EVI-
DENCE—SUFFICIENCY—REVIEW.  Under Rem. & Bal. Code, § 9112, re-
quiring property to be assessed for taxation at its fair market value
(which is largely a matter of opinion), the courts will not set aside
an assessment of platted property made in good faith, on the ground
that it was arbitrary and fraudulently excessive, on a showing merely
that it was assessed largely in excess of adjacent unplatted property
of a like character, where it appears that it had upon it the nucleus
of a village located between the water front and two lakes, and much
of it had been sold off at prices greatly in excess of the assessed
value.

Appeal from a judgment of the superior court for Sno-
homish county, Alston, J., entered April 27, 1914, upon
granting a nonsuit, dismissing an action to enjoin the col-
lection of a tax, tried to the court.  Affirmed.

*Wm. A. Johnson,* for appellant.

*R. J. Faussett* and *Joseph H. Smith,* for respondents.

ELLIS, J.—This is an action to enjoin the collection of
taxes for the years 1910, 1911 and 1912, against certain
platted property, and to compel the acceptance of a less
amount than that assessed in satisfaction of the tax.  It is
claimed that the tax as assessed is illegal because of gross
inequality in the valuation of the property in question as
compared with adjacent platted property, which it is as-
serted is of similar character and of equal value.  The facts
are these: During the year 1909, the plaintiff was the owner
of a large tract of land in what is known as the Port Susan
District, in Snohomish county.  This tract lies between the
shores of Puget Sound and two small lakes, known as Lake

[1]Reported in 151 Pac. 96.

Martha and Lake Howard. It is ordinary logged-off land, and, except that it is adjacent to the water front of Puget Sound and these two lakes, does not differ in physical characteristics from other land in that vicinity. For the years prior to 1910, this land was valued for assessment at an equal ratio with the other unimproved and unplatted lands in that vicinity, ranging from $7.50 to $9 an acre.

During the summer of 1909, the plaintiff caused the property in question to be platted as C. D. Hillman's Birmingham addition to the city of Everett, Division One. Most of that part of the land along the water front of Puget Sound and the two lakes was platted into lots thirty by one hundred feet and running about thirteen lots to the acre, with abutting streets and alleys. Four blocks in the southwest corner were cut into two-acre tracts, and the remainder lying between this water front property was cut into approximately one hundred and eighty five-acre tracts, with dedicated streets extending north and south, and east and west throughout the whole plat in such manner as to make all the lots and all the acre tracts abut upon some street. At the time of the platting, some of the streets were cleared to the extent of light slashing. Some of these lots and tracts were sold soon after the filing of the plat, but at the time of the valuation for assessment in March, 1910, there had been little change in the physical conditions, except that some of the purchasers had commenced to clear their land and some houses were being built. The settlement on the plat then consisted of two stores and about a dozen houses. There were some sidewalks. For transportation facilities, there is a good road to Stanwood and a boat to Everett, running at least three times a week and sometimes daily.

In March, 1910, the county assessor visited this platted property, remaining for two or three days and examining it thoroughly for the purpose of valuation. He extended it upon the tax rolls in subdivisions according to the plat, as required by law. The assessment for 1912 was made in the

same manner. The valuations placed upon these lots and acre tracts were considerably increased over the valuation formerly placed upon the land as acreage, and greatly in excess of the valuation placed upon unplatted lands adjoining the plat, which were still assessed at from $8 to $14 an acre. The platted land was assessed for the years 1910, 1911, and 1912, at from $5 a lot to $20 a lot for the small lots, the higher valuations being placed upon the lots having a waterfront on one side and a street on the other. The five-acre tracts were valued for assessment at from $30 to $50 an acre. The evidence shows a uniform rate of valuation of all property similarly situated within the addition. The sole lack of uniformity complained of is found in a comparison between the valuations of property within the plat and property lying wholly without the plat, except one unplatted forty-acre tract surrounded by the plat but belonging to other parties. During the period of time extending from the platting in 1909 until the first day of March, 1912, the evidence shows that the plaintiff had disposed of between forty and sixty per cent of its holdings within this plat. There is no claim that the property still retained by the plaintiff is valued differently by the assessor from that sold to other parties.

At the conclusion of the evidence adduced on behalf of the plaintiff, the defendants moved for a nonsuit upon several grounds. The court granted the nonsuit upon the ground that the plaintiff had failed to show that the assessor had acted arbitrarily or fraudulently or that the assessments in question were excessive or fraudulent. The plaintiff appealed.

The governing statute, Rem. & Bal. Code, § 9112 (P. C. 501 § 113), provides that "all property shall be assessed at its true and fair value in money," that the assessor shall value each description of property "by itself, and at such sum or price as he believes the same to be fairly worth in money at the time such assessment is made," and that "the true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent

debtor." In its simplest terms, this means that property shall be assessed at its fair market value at the time the assessment is made. *Spokane & Inland Empire R. Co. v. Spokane County*, 75 Wash. 72, 134 Pac. 688; *National Lumber & Mfg. Co. v. Chehalis County*, 86 Wash. 483, 150 Pac. 1164.

In the nature of the thing, market value is largely a matter of opinion. So long, therefore, as those charged by the law with the duty of valuation for taxation act in good faith the court can grant no relief. *Olympia Water Works v. Thurston County*, 14 Wash. 268, 44 Pac. 267; *Olympia Water Works v. Gelbach*, 16 Wash. 482, 48 Pac. 251; *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553; *Northern Pac. R. Co. v. Pierce County*, 55 Wash. 108, 104 Pac. 178; *Doty Lumber & Shingle Co. v. Lewis County*, 60 Wash. 428, 111 Pac. 562, Ann. Cas. 1912B. 870.

In *Templeton v. Pierce County, supra*, the court reviewed many of its prior decisions, summarizing them to the effect that the court will grant relief against an arbitrary, fraudulent or maliciously excessive valuation by the assessing officer, and fraud may be presumed from a palpably exorbitant overvaluation, but where the assessing officer has exercised an honest judgment and no fraudulent, arbitrary or capricious action in making the assessment is shown or can be presumed, the court will not interfere; that where it appears that there has been an honest endeavor to get at the true value and there is room for an honest difference of opinion as to the value, the judgment of the officer is conclusive; that if property, though overvalued, be assessed in the same proportion as other like property, and the system of valuation adopted operates equally on all other like property, the constitutional provision as to uniformity is complied with.

In *Northern Pac. R. Co. v. Pierce County, supra*, these principles are reaffirmed, the court adding, that "the assessor in placing valuations upon property acts in a *quasi* judicial capacity, and the law presumes that he has per-

formed his duty in a proper manner; that this presumption is liberal, and the evidence to overthrow it must be clear."

Applying these principles, we find no sufficient ground for interference with the assessment here in question. There is no evidence of fraudulent or capricious action on the assessor's part. He assessed all property within the addition, whether owned by the appellant or others, on the same basis. His valuations on all such property was governed by the same considerations. If all the sales of property in the addition are any criterion of market value, he has assessed this property at not exceeding twenty per cent of its selling price at the time of the valuation. This must be conceded, but the appellant argues, in substance, that the mere platting of land cannot change its value and that the assessor, who admitted taking the platting into consideration as an element of value differentiating this land from that adjacent to it, was influenced by an impossible factor. This presents the sum and substance of the issue.

The very purpose of platting land is to add to its value—its salability—its market price. If it did not as a general rule have that effect, it is fair to assume that expert real estate men would not go to the trouble and expense of platting their lands. It is a matter of common knowledge, of which no observant man can reasonably feign ignorance, that lands so situated as to be available for city lots, suburban residences or summer homes are greatly increased in actual salable value by platting into lots or tracts suitable for such purposes, with potential streets, alleys and approaches dedicated to public use. Land which is at all suitable for these purposes, by the single fact of segregation into lots surrounded with dedicated streets, thus rendered capable of separate purchase, access and use, acquires a salability, an actual market value, over and above its value *en masse* as acreage, often measured in multiples. These conclusions are matters of common experience, but they are also amply sustained by the evidence in this case. The assessor pointed

out these considerations in his testimony as entering into his valuation.. Moreover, the evidence shows that many, possibly sixty per cent, of the lots and acre tracts in this plat, during the period for which the taxes in question were assessed, have been sold by appellant at prices which, calculated by the acre, range from $100 to over $1,000 an acre.

The trial judge in summing up the evidence so convincingly expressed the situation as to warrant a quotation.. He said:

"We start out in this case with this fact, that the assessor personally went over there and stayed three days and endeavored to arrive at a just valuation of this property, and nobody has contradicted that. He was on the ground; he saw what was going on; he saw the activity there, and made a valuation accordingly."

Reviewing the testimony of the appellant's manager, he said:

"Now those are the figures I took from the witness when he was giving those prices. He didn't say that was the list price; he said that was what they were selling for. He used the exhibit, and he may have made his deductions or may not. Those lots were assessed, at the highest, at twenty dollars a lot, lots selling for one hundred and fifty dollars apiece, and the assessor over there and getting all the information he could as to the value of this property, and assessed lots selling for one hundred and fifty dollars at fifteen dollars, and now you have sold all the property and come in here and say that is an exorbitant assessment. Now you cannot blow hot and cold like that. I think the property was worth—at any rate, I think it is not assessed at sixty per cent of its fair cash value at that time, and the assessment will average about twenty per cent of the selling value, according to the sales that I have taken down—I have taken down nearly all the sales that have been made. None have been made for less than one hundred dollars an acre, with the exception of one that was on the ridge which sold for four hundred dollars for five acres. That is the only parcel that has ever been sold for less than one hundred dollars an acre. Now, I am satisfied that the property in this county, taken as a whole, is assessed at least at fifty per cent of its value."

There is no claim, in fact under the evidence there can be none, that the principle of uniformity has been impinged by the assessor in his valuation of the lands *within* the plat. Tracts similarly situated within the plat are similarly valued regardless of ownership. The very fact that this property was platted and had upon it the nucleus of a village, gave to the land in the addition a different character from that surrounding it. While the assessments seem high as compared with outside unplatted lands, they are not so high when compared with the many actual sales covering the same period as to evidence caprice, malice or arbitrary action.

The judgment is affirmed.

MORRIS, C. J., FULLERTON, and MAIN, JJ., concur.