[No. 13937.   Department One.   August 6, 1917.]

NORTHWESTERN IMPROVEMENT COMPANY *et al.*, *Appellants*,
v. PIERCE COUNTY, *Respondent*.[1]

TAXATION—ASSESSMENT—EXCESSIVENESS—EVIDENCE—SUFFICIENCY.
An assessment of coal lands for taxation will not be set aside as excessive where it was unquestionably supported by the testimony of two experts of undoubted learning and familiarity with the facts necessarily involved in their opinion, in view of the rule that the opinion of taxing officers in fixing land values will not be interfered with by the courts in the absence of arbitrariness of inequality, and the fact that the law presumes that the assessor fully performed his duty.

APPEAL—REVIEW—ERRORS FAVORABLE TO APPELLANT. Owners, alleging excessive taxation of coal lands, cannot complain of the methods of the court in reducing the assessments, in that it gave the owners the advantage of a reduction whenever certain expert witnesses testified to no value or did not uphold the assessor's valuation; since it was favorable rather than unfavorable to them.

Appeal from a judgment of the superior court for Pierce county, Albertson, J., entered September 18, 1916, upon findings in favor of the defendant, in consolidated actions to recover money paid and to secure the reduction of taxes, tried to the court. Affirmed.

*Geo. T. Reid, J. W. Quick, L. B. da Ponte, C. A. Murray,* and *H. S. Griggs,* for appellants.

*Fred G. Remann, Harry E. Phelps,* and *A. B. Bell,* for respondent.

MORRIS, J.—Owing to the size of the record and the amount of matter to be considered, the determination of this case has been delayed somewhat beyond its order. Appellants commenced three separate actions against Pierce county, seeking to reduce certain taxes and cancel others against coal lands belonging to appellants, and to recover judgment for taxes previously paid under protest. By stipulation of the parties,

[1]Reported in 167 Pac. 33.

the suits were consolidated for the purpose of trial below, with a provision that a separate judgment be entered in each case. The lower court made findings reducing the taxes on some of the lands involved, cancelling others, and granting judgment in favor of two of the appellants for taxes previously paid under protest. These three suits involve the assessment for coal values of fifty-four sections of land. In 1908, some 19,727 acres of the land here involved, belonging to the Northwestern Improvement Company, were assessed on their coal values at $179,690, and taxes levied in the sum of $4,446.94 for the year 1908, and $4,266.76 for the year 1909. In April, 1910, the Northwestern Improvement Company commenced an action complaining of this assessment, and obtained a judgment cancelling a part thereof, the lower court finding that the lands were not valuable for coal and restraining the collection of that part of the assessment levied on coal values. No attempt will be made to summarize the evidence. It is too long and too conflicting. We will, for the most part, content ourselves with the statement of the conclusions reached.

In the fall of 1913, W. I. Moulton, a timber cruiser and speculator in coal lands, acting under the direction of the county assessor, began gathering statistics upon which to base the valuation of these lands for the purpose of taxation. Moulton was more or less familiar with the land, having personally examined much of it and having at one time owned some of it. He went upon the land in November, 1913, for the purpose of making further examination with the view of ascertaining the value of the land as acreage and for timber and coal. In giving the result of his labors to the assessor, he gave not only his opinion based upon his personal examination, but as the same had been determined after an examination of the compiled data as to the land and after consulting with geologists, the state mine inspector, mine officials and other public officials in other states for the purpose of ascertaining their methods of fixing coal values for the purpose

of taxation.   This report of Moulton's, compiled from the above sources, was made the basis by the assessor for the assessment roll for the years 1913 and 1914, and was divided between the three appellants as follows: Northwestern Improvement Company, approximately 17,000 acres, $287,250; St. Paul & Tacoma Lumber Company, approximately 3,200 acres, $41,375; Connellsville Coal & Coke Company, approximately 960 acres, $6,645.  Appellants, being dissatisfied with these assessments, brought this action and appealed from adverse decree.

The evidence is bulky and conflicting.  A number of witnesses with much practical experience in coal mining testified on behalf of the appellants and were generally of the opinion that the land had little value as coal land; that about the only value that could be given the land was of a speculative nature.  No recent sales were shown.  Neither does it appear that any of the land had been offered for sale of late years. So that, in reaching a conclusion as to the value of these lands as coal lands, such conclusion must be based almost entirely upon the opinion of various witnesses.  In its behalf respondent called Moulton, who had gathered the data from which the assessments were compiled, R. P. Tarr, a graduate geologist, who had been in the employ of the Northwestern Improvement Company for some nine years prior to the trial, and Professor Bailey Willis, a man of recognized standing as a geologist with much experience as a geological investigator and in the making of geologic surveys.  Willis had made an extensive survey of these lands in the years 1881 to 1884 and had compiled a report.  He made a second examination in 1896.

The lower court seems to have been influenced in reaching its conclusion largely by the testimony of Tarr and Willis. On what they consider a conservative estimate, these two witnesses, based upon their knowledge of these particular lands and as experts on the subject of coal lands in general, testified that these lands contained many millions of tons of min-

able coal.  It also appeared that the owners of these lands had, from time to time, given leases on royalties and had thus established a measure of the royalty value of each ton of coal.  With this royalty measure thus established and upon their estimate of the number of tons of coal, Tarr and Willis fixed their values as coal properties.  They do not agree as to the value of the land in each section, and at times their values are far apart.  In their opinion, much of the land is more valuable than is shown by the valuations fixed by the assessment roll, while some of it is of less value.  It is apparent, by reason of the fact that some of the coal is inferior in quality to the product of competing mines in the same district, that, up to the present time, but little, if any, profit has been drived from any development of the land as coal properties, but it is also clear that, notwithstanding this fact, there has never been any abandonment of the property as a coal mining proposition.  A summary of the lower court's conclusion may be found in the following excerpt from its decree:

"Let a decree be entered striking from the assessment rolls all of the taxes levied for coal valuations upon the lands which under the testimony of Prof. Willis and Mr. Tarr are without such value, and reducing the valuations for coal of all of the lands involved in the three consolidated cases to the maximum value for coal to be found in their testimony where their estimate was below the amount of the assessment.  Of course the assessment against the different parcels of land on account of coal cannot be increased beyond the amount extended on the rolls, even though in the opinion of these witnesses that estimate was below the actual fifty per cent value, as this court cannot act as a board of equalization."

In reviewing these assessments, we must bear in mind that we are dealing largely with questions of opinion as to the value of these lands for the purpose of taxation.  It has too long been the law to be now doubted that equity will not interfere to set aside the opinion of taxing officers in fixing the

value of lands for purpose of taxation until it is shown that such arbitrariness or inequality enters into the assessment as to violate the fundamental principles of taxation. It is also well settled that, in making an assessment, it is presumed the assessor has only performed his full duty, and the burden of showing otherwise is cast upon those who attack it.

"The assessor and board of equalization act in a *quasi* judicial capacity in making or equalizing assessments. The law presumes that they have performed their duty in a proper manner. Where the rights of the public require it, the presumption in favor of due performance is liberal, and the evidence to overthrow it must be clear." *Templeton v. Pierce County*, 25 Wash. 377, 382, 65 Pac. 553.

See, also, *National Lumber & Mfg. Co. v. Chehalis County*, 86 Wash. 483, 150 Pac. 1164; *Hillman's Snohomish County Land & R. Co. v. Snohomish County*, 87 Wash. 58, 151 Pac. 96; *Heuston v. King County*, 90 Wash. 200, 155 Pac. 773.

There can be no question but what the testimony of the respondent's witnesses clearly supported the assessment upon these lands. Even with no testimony to support it, there will be a clear presumption in favor of the correctness and fairness of the valuations placed upon these lands by the assessor, and we cannot find, without in the most part disregarding the testimony in behalf of respondent, that appellants have sustained the burden of showing excessive values. *Heuston v. King County, supra.* We have, therefore, not only the presumption in favor of these assessments, the findings of the lower court sustaining them in the main, but the testimony of at least two witnesses of unquestioned learning and undoubted familiarity with the facts necessarily involved in the opinions expressed by them, which, after most careful compilation of data, support, at least in the amount of the judgments, the values fixed by the assessor. Realizing the value of these two witnesses to respondent, appellants discuss their testimony at great length and undertake to show the fallacy of their reasoning. We are, however, unable to find

anything in the record which convinces us that their testimony should not be given due consideration, especially after the trial judge, a careful trier of fact, having the witnesses before him with due opportunity for examination, and reaching a conclusion as to the weight and value of their testimony, has entered a decree supporting in the main the contention of respondent.

Appellants also complain of the method employed by the lower court in reducing the assessment upon these lands in employing the value nearest approaching the assessed value placed by Tarr or Willis upon each section of the land. They seem to be of the opinion that the lower court disregarded the testimony of these witnesses when favorable to appellants and accepted it when unfavorable. The decree, however, is not subject to this criticism. What the lower court really did was to give appellants advantage of a reduction whenever these two witnesses testified to no value, and when the value placed upon any section by the assessor was not upheld by either, appellants were again favored by a reduction in value equal to the nearest approach to the assessor's value placed upon any section by either of the witnesses. Such a method seems to us to be favorable rather than unfavorable to appellants' contention as here made, and the result is their obtaining the relief granted them by the decree.

Numerous other contentions are made in appellants' behalf, most of which are answered by what has already been said. Others involve a detailed discussion of the evidence, which would add nothing to the value of this opinion. Upon the whole case, we are of the opinion that the judgment should be affirmed. It is so ordered.

Ellis, C. J., and Main, J., concur.