[No. 13344. Department Two. August 6, 1917.]

WEYERHAEUSER TIMBER COMPANY et al., *Respondents*, v. PIERCE COUNTY, *Appellant*.[1]

APPEAL—RECORD—ABSTRACT. Upon cross-appeals, the defendant's abstract of the record will not be stricken because the defendant took no exceptions to the findings nor because defendant's brief did not sufficiently refer to the pages of the abstract, where it may be treated as supplemental to the plaintiffs' abstract, which the statute permits, and has been useful in marshaling the contents of the record.

TAXATION—VALUATION FOR ASSESSMENT—EXCESSIVENESS—EVIDENCE —SUFFICIENCY. An assessment of timber and timber lands for taxation will be set aside as arbitrary and discriminatory where the assessor adopted old valuations without revision in the face of a depreciation in the market value, and without applying the 50 per cent basis for assessment, and in applying the zone system without relation to the quality or accessibility of the timber on any given tract, which was prohibitive of the exercise of any personal judgment on the part of the taxing officers.

SAME. The valuation of all hemlock timber at the flat rate of 25 cents per thousand throughout the county will be set aside as excessive or arbitrary, where the evidence shows that hemlock had such value only where it is in sufficient quantity and accessible, and that much of it was of little commercial value, having only a speculative future, and that the assessor adopted without change the work of a prior assessor made at a time when the market was higher.

SAME. An assessment of timber and timber lands will not be set aside because the assessor in addition to the value of the timber included a "land value," where there was evidence that logged-off lands were of some value, and there was no separate assessment of the land, the statute, Rem. Code, §§ 9095, 9222-1, permitting the separate assessment of timber only in case of separate ownership; but the assessor having adopted a 60 per cent instead of a 50 per cent basis of valuation for assessment purposes, a reduction will be made accordingly to correspond with other classes of property.

SAME—EXCESSIVE ASSESSMENT—EVIDENCE—ADMISSIBILITY. In an action to reduce excessive assessments, evidence of assessments in prior years is admissible for the purpose of showing that the prior assessments were adopted and were made on a basis of 60 per cent when the law now in force requires a fifty per cent basis.

[1]Reported in 167 Pac. 35.

Cross-appeals from a judgment of the superior court for Pierce county, Clifford, J., entered November 6, 1915, upon findings in favor of the plaintiffs, in consolidated actions to cancel taxes and to recover taxes paid under protest, tried to the court. Modified on plaintiffs' appeal.

*Fred G. Remann, Harry E. Phelps,* and *A. B. Bell,* for appellant.

*L. B. da Ponte, W. L. McCormick, Geo. T. Reid, J. W. Quick, and C. A. Murray* (*F. M. Dudley* and *H. S. Griggs,* of counsel), for respondents.

Ellis, C. J.—The Weyerhaeuser Timber Company and the Northwestern Improvement Company began separate actions against Pierce county for the cancellation of a portion of the taxes assessed against certain timber lands for the year 1914 on the ground of overvaluation, and for recovery of excess payments made under protest. By stipulation the two actions were consolidated for trial, with an agreement that separate judgments be entered. Supplemental complaints were filed presenting the same issue as to the assessed valuations for the year 1915, upon which taxes were not then due. The Weyerhaeuser Timber Company sought a reduction of $24,130.58 on its tax of $60,152.65, and the Northwestern Improvement Company a reduction of $5,648.65 on its tax of $9,772.34. The trial court found that plaintiffs were entitled to a 16 2-3 per cent reduction in the amount of the valuations upon which they had been assessed, gave judgment to the Weyerhaeuser company in the sum of $11,314.17 for the excess taxes of 1914 paid under protest, and decreed an equivalent reduction of the taxes falling due for the year 1915. In the case of the Northwestern Company, the court gave judgment canceling its taxes in the sum of $1,628.72 for the year 1914, and in the sum of $1,642.52 for the year 1915, the variation in amounts being due to the fact that the assessor had, in certain instances, increased the valuation for the latter year over that of the preceding year. From these

judgments, the plaintiffs and defendant both appeal, the former claiming they are entitled to a further reduction in valuations, the latter that the court erred in granting any reduction. To avoid confusion we shall refer to the parties throughout as plaintiffs and defendant.

Plaintiffs have moved to strike the abstract of the record filed by defendant in support of its appeal. It is urged that it has no place in the record because defendant took no exceptions to the court's findings of fact (*Harbican v. Chamberlin*, 82 Wash. 556, 144 Pac. 717) ; and further, that it is useless, in that defendant's brief insufficiently refers to the pages of the abstract for verification. Rule VIII, 71 Wash. XLIX. Regardless of defendant's cross-appeal, its abstract may be treated as supplemental to that filed by plaintiffs on their own appeal. Such an abstract the statute permits a respondent to supply. Though not referred to in defendant's brief as freely as could be desired for the convenience of the court, this abstract has been useful, alike with that of plaintiffs', in marshaling the contents of a voluminous record. The motion is denied.

Plaintiffs contend that their properties were subjected to an arbitrary and excessive valuation, in that (1) they are now assessed at values placed on them at the height of a boom in the lumber industry, and that, at the time of assessment, suit and trial, lumber values had depreciated from thirty to fifty per cent; (2) that an arbitrary zone system was employed resulting in a valuation of $1 per thousand being placed on their fir timber within one mile of a logging road or other outlet, and a reduction of five cents per thousand with each mile of recession from such road or outlet, regardless of logging conditions and the quality and accessibility of the timber; (3) that all hemlock, regardless of quality and accessibility, was assessed on an arbitrary valuation of 25 cents per thousand; (4) that, in addition to the valuation of the timber for more than it was worth, a land value averaging $1.75 per acre was included; and (5) that,

for the years 1914 and 1915, all of the property in Pierce county, save timber lands and other unimproved lands, was assessed on a basis not exceeding fifty per cent of the true value in compliance with the act of 1913 (Rem. Code, § 9112), while timber lands and unimproved lands were assessed as before on a basis of sixty per cent, which course was arbitrary and unconstitutional.

We shall first take up the claim of plaintiffs as to the valuation of the fir timber, including cedar and spruce, for the years 1914 and 1915. In order to obtain a clear understanding of the situation, it is necessary to recur to the work of the assessor's office for prior years. The evidence shows that, in the year 1908, all property in Pierce county was valued by the assessor for assessment purposes on a basis of sixty per cent of its full value. · In fixing the values of fir timber, he adopted a zone system, placing the assessment value within one mile of a railroad, logging road or other outlet at $1 per thousand feet, and reducing the values five cents per thousand for each additional mile until a minimum of fifty cents was reached, which minimum was thereafter applied regardless of added distances. In making these figures, it fairly appears that the assessor failed to take into consideration the elements of quality and quantity of timber, its accessibility and the logging conditions. The values fixed by the assessor in the year 1908 were adopted in each subsequent biennial valuation for assessment without material change, and are the figures now in issue as the assessment values for the years 1914 and 1915. By the act of 1913 (Rem. Code, § 9112), it is provided that "all property shall be assessed at not to exceed fifty per cent of its true and fair value in money." In making his assessment for the years 1914 and 1915, the assessor reduced the value of all property, excepting timber lands and unimproved property, to a figure not exceeding fifty per cent of its full value, while continuing in force the old 1908 assessment on a sixty per cent basis without reduction as to timber lands and unimproved property; this, not-

withstanding the fact, as the evidence shows, that timber values had depreciated fully 25 per cent at the time the assessment in dispute was made. The valuation in 1908 was made at a time when the lumber industry in this state had reached the highwater mark, from which stage it had steadily subsided until the period covered by the years 1914 and 1915.

The trial of this action was had in 1915, and the evidence of values prevailing at that time and at the time of the assessment is widely divergent, the witnesses for plaintiffs generally placing the values lower than plaintiffs concede, while the witnesses for the county in some cases exceed the assessor's values. But averaging the figures of all the witnesses on both sides, we believe, invariably results in a valuation lower than that fixed by the assessor. For instance, in township 16 north, range 3 east, the average assessed value is 70.8 cents per thousand, and the average value placed by the witnesses is 48 cents, while the plaintiff concedes a value of 41.5 cents. In so far as the credibility of witnesses is concerned, those for plaintiffs are sustained in large part by the cruise of timber lands made by the county in the year 1907 for use in the assessment of timber lands for taxation. This cruise is in evidence, and the court found "that said cruise was made and that it was a careful, accurate and correct cruise, and has been admitted to be such by both of the parties." A sample comparison of an assessment with the cruise description will be of interest. The cruise describes the fir timber on the east one-half of section 13, township 16 north, range 3 east, as small and of inferior quality, while the west half has "some good logs." On 1,837 feet, standing two-thirds on the east side and the balance on the west, the high assessment valuation of $1.15 is placed, which plaintiff asks to be reduced to 40 cents. The highest valuation placed on land in that township by the county's witness Flint was only $1.25, which on a fifty per cent basis for assessment would be 62.5

cents.   The inequality in the work of the assessor finds fur-
ther demonstration in his failure to place the same ratings
upon different tracts of timber practically equivalent in qual-
ity, quantity and logging conditions.   For instance, in town-
ship 18 north, range 6 east, the fir and cedar in section 23 is
rated at $1.20, while in section 15 it is rated 85 cents.   In
the former the fir is "old growth, sound and smooth," the cedar
"strictly shingle timber, a great many trees will go to pieces
in falling."   In the latter the fir is "large, smooth and sound,
first-class timber," and the same description applies to the
cedar.   Section 15 shows a somewhat higher grade, and is
one-half mile nearer railroad transportation, yet is valued 35
cents lower than section 23.   All the timber on which reduc-
tions are sought is located in rough, broken, and in some
cases mountainous districts where logging conditions are un-
favorable and often practically prohibitive.   The figures ob-
tained from averaging the testimony discloses an overvalua-
tion by the assessor to the extent of at least 25 per cent, and
this is supported by the disclosures of the cruises in evidence.
The cruises, which are records in the assessor's office, tend to
show either arbitrary action or marked inadvertence in mak-
ing the valuations upon the lands here in controversy.   The
apparent fact that the assessor merely adopted the figures of
an assessment made six years earlier certainly fails to show
the exercise of an advised and mature judgment.   And it is
undisputed that the value of timber had depreciated to a
very considerable extent at the time the assessment of 1914
was made.   The assessor himself testified before the state
board of equalization as follows:

"Now, in regard to timber land, you will find that we have
generally kept the assessable values of timber lands in Pierce
county up to about what they were formerly. . . . Milling
properties, as we all know, have gone down greatly in the
last year, especially in this county. . . . Many of them
have gone out of business; it is a hard row for the milling
interests. . . . We have kept those values too high.   They
are too high now, and it is almost criminal with the condi-

tions of the timber interests to hold their values up the way we have done for assessable purposes."

The evidence is extremely voluminous. We have examined it carefully and it is obviously impracticable to discuss it more in detail. It must suffice to state our conclusions. We are satisfied that the assessor did adopt the old valuations of 1908 without revision in the light of the current market value of timber and timber lands, and without applying the fifty per cent basis for assessment, and that this course was arbitrary and discriminatory. We are further satisfied that the original valuation of these timber lands in 1908 was made upon a fundamentally wrong basis or theory, in that the zone system employed had no relation to the quality or accessibility of the timber on any given tract, and was essentially arbitrary and prohibitive of the exercise of any personal judgment on the part of the assessing officers as to actual value of these fir, cedar and spruce timber lands. For a decision expressly so holding, see *Hersey v. Board of Supervisors of Barron County*, 37 Wis. 75. Finally, we are satisfied from all of the evidence that these things have resulted in making the fir, cedar and spruce timber valuations excessive to the extent of at least twenty-five per cent.

Turning now to the hemlock timber, we find that it was assessed for the years here in question at a flat rate of 25 cents per thousand throughout the county. Plaintiffs claim that this valuation was placed without regard to quality, accessibility or logging conditions, and that, taking these elements into consideration, their hemlock values should be reduced to values ranging from 2.5 cents to 20 cents per thousand upon various sections. This would result in an average valuation upon the Northwestern Improvement Company's lands of 9.5 cents per thousand, and upon the Weyerhaeuser lands of 10.5 cents per thousand. The reduction made by the trial court, from a sixty per cent to a fifty per cent basis of valuation, produced a value for assessment of 20.8 cents instead of 25 cents per thousand. The evidence

shows that good hemlock undoubtedly has a full value of
fifty cents per thousand where it is in sufficient quantity and
easy of access for logging. While some of the hemlock in
dispute meets these requirements, it is clear that most of it
does not. Much of it is described as small, rough, limby,
knotty, scrubby, conky and poor, while some is described as
medium and second class. On a few of the sections it is of
first class quality and abundant. It appears from the evi-
dence that it did not pay to log hemlock, since it had very
little commercial value at the time of trial. It has a tendency
to rot where exposed to the elements, but it is conceded that
it has a value for interior use in buildings. Undoubtedly
hemlock has a value, but the quality and logging conditions of
most of that in controversy renders it practically unmarket-
able. It is located upon steep and broken territory, in great
part inaccessible to logging roads and without streams
capable of being utilized as an outlet, owing to precipitous
banks and rocky bottoms. This class of timber is described
by some of the witnesses as having only a speculative future
value, and as practically worthless at the present time.

Carefully considering the testimony of all the witnesses,
we find that they place an average assessment value on the
Northwestern company's hemlock of 16 cents per thousand,
and upon that of the Weyerhaeuser company of 21 cents. In
the case of the latter company's hemlock, this valuation by
the witnesses is substantially the amount to which the trial
court found they were entitled, and no further reduction
would be warranted. But in the case of the Northwestern
company, we think the evidence justifies a reduction to the
extent of 25 per cent of the assessed valuations, or a value of
18¾ cents per thousand. The very fact of the imposition of
a flat rate of valuation by the assessor, in the light of the
evidence, shows that he did not exercise his judgment by tak-
ing into consideration the real values of the different tracts
of hemlock. This is further confirmed by the fact that he
adopted without change the work of a prior assessor, made

at a time when the market value of all timber was admittedly higher and when the valuation then made and here adopted was regarded as being sixty per cent of the higher actual values existing at that time.

In making this assessment the assessor included also a "land value," not for the purpose of separately assessing the land, but as an element of value to be considered in assessing the land with the timber it bears as real estate. This land value for assessment purposes was placed at from $1 to $3 per acre, resulting in an average valuation of $1.75 per acre on the lands here involved. The Weyerhaeuser Timber Company contends that the lands have no value except to carry the timber, and inasmuch as the timber was assessed to the value allowed by law, that value absorbed the land value and the further assessment of the lands was illegal. The evidence shows that timber lands were usually valued only for the timber upon them, and were bought and sold on that basis. But it further appears that logged off lands are generally held by the lumberer for sale, the evidence showing prices in some instances of $3 per acre. The evidence shows that some of the land in controversy could be utilized for agriculture and some for grazing, but a considerable part is fit only for reforestation. Such evidence is sufficient to show that the land carries some value in and of itself aside from the timber.

Plaintiff does not specifically attack the valuations on any tract as being excessive as a land valuation, but its position, in effect, amounts to a charge that an assessment both on the land and on the timber constitutes double taxation of the same property. It seems a sufficient answer to say that the land was not separately assessed nor separately taxed. It was merely considered as an element of value which, with the value of the timber, goes to make up the value of the whole as real estate. Plaintiffs' view does not seem tenable under our system of taxation requiring all real property to be assessed unless specifically exempted. Our statutes (Rem. Code, §§ 9095 and 9222-1) permit the separate taxation of

standing timber only in case the land and the timber are held in separate ownership.  This is a legislative recognition of the fact that the land value is not absorbed in the timber value, but is an element of value to be considered in the assessment of timber lands when both land and timber are held in the same ownership.  Real property for purposes of taxation is defined by Rem. Code, § 9092, as including "the land itself . . . and all rights and privileges thereto belonging, or in anywise appertaining."  We cannot escape the conclusion that land has some intrinsic value aside from what it carries and, as such, is subject to taxation, however great or small may be the value of the appurtenant timber.  While it would seem that lower land values would be appropriate in this case, there is no evidence of arbitrary action on the part of the assessor so far as the land values are concerned, beyond the fact of his adoption of a sixty per cent instead of a fifty per cent basis of valuation for assessment purposes.  That inequitable factor permeates the whole assessment.  Plaintiff is entitled to the 16 2-3 per cent reduction made by the trial court in the element of "land values," the same as in the element of the timber values of its real estate.  This ruling does not apply to the Northwestern company, since in this action that company does not seek a reduction in "land values."

The law of this case is comparatively simple.  It is well settled that the assessor and board of equalization act in a quasi-judicial capacity, that the law presumes that they have performed their duties in a proper manner, that this presumption will be liberally indulged, and that the evidence to overthrow it must be clear.  *Templeton v. Pierce County*, 25 Wash. 377, 65 Pac. 553; *National Lumber & Mfg. Co. v. Chehalis County*, 86 Wash. 483, 150 Pac. 1164; *Hillman's Snohomish County Land & R. Co. v. Snohomish County*, 87 Wash. 58, 151 Pac. 96; *Hueston v. King County*, 90 Wash. 200, 155 Pac. 773; *Northwestern Improvement Co. v. Pierce County*, ante p. 528, 167 Pac. 33.  But it is equally well set-

tled in this state that, where the evidence shows arbitrary or capricious action on the part of the assessing officer rather than the exercise of an honest judgment, or shows that he proceeded upon a fundamentally wrong basis or theory in making the assessment, the courts will grant relief against an overvaluation of real property, and this regardless of the action of the board of equalization in the premises. *First Thought Gold Mines, Limited, v. Stevens County,* 91 Wash. 437, 157 Pac. 1080; *Northern Pac. R. Co. v. Benton County,* 87 Wash. 534, 151 Pac. 1123. It is also well settled that there is neither that uniformity nor equality which the law requires, where all kinds of property save one are designedly and of fixed purpose assessed at less than a given percentage of their full and fair value, while that one class of property is assessed at a greater percentage of such value.

"Such an arbitrary policy is vicious in principle, violative of the constitution, and operates as a constructive fraud upon the rights of the property holder discriminated against. In such cases equity will grant relief." *Spokane & Eastern Trust Co. v. Spokane County,* 70 Wash. 48, 126 Pac. 54, Ann. Cas. 1914B 641.

See, also, *Spokane & I. E. R. Co. v. Spokane County,* 82 Wash. 24, 143 Pac. 307, and *Greene v. Louisville & Interurban R. Co.,* 244 U. S. 499.

Though this court has held that it will not interfere with an assessment upon the sole ground of excessive valuation, in the absence of some showing of actual fraud or arbitrary action, unless the assessment be so great as to amount in itself to fraud in law (*Northern Pac. R. Co. v. State,* 84 Wash. 510, 147 Pac. 45, Ann. Cas. 1916E 1166; *Hueston v. King County, supra*), it is obvious that this rule has no application to a case where the evidence shows such actual arbitrary action.

Applying the evidence in the light of these well established principles, we are constrained to direct the modification of the judgment in the following particulars: On plaintiffs'

appeal, the judgment of the trial court will be modified to the extent of granting plaintiffs a 25 per cent reduction on the fir, cedar and spruce values for the years 1914 and 1915 upon all that class of timber in controversy in this action. As to the hemlock timber, the Weyerhaeuser Timber Company will be granted a 16 2-3 per cent reduction on such timber located in township 16 north, in ranges 5 and 6 east, township 18 north, range 6 east, and township 19 north, in ranges 7, 8 and 9 east. The Northwestern Improvement Company will be granted a 25 per cent reduction in the assessed value of its hemlock timber in townships 15, 16, 17, 18 and 19 north, range 6 east. The "land values" of all the lands of plaintiff Weyerhaeuser Timber Company here involved will stand as reduced by the trial court 16 2-3 per cent to bring it to fifty per cent of full value corresponding with other classes of property. These reductions are not to be considered as additional to the general reduction made by the trial court, but as including that reduction.

By its cross-appeal, defendant assigns as error the action of the trial court in making a 16 2-3 per cent reduction. What we have said touching plaintiffs' appeal sufficiently disposes of this assignment.

Some complaint is also made of the action of the trial court in admitting in evidence assessments for years prior to those involved in the present controversy. We think, however, that this evidence was admissible on two grounds—for the purpose of showing that the assessor, in making the 1914 and 1915 assessments, merely adopted the valuation of prior assessors without a proper exercise of his own judgment, and for the further purpose of showing that these adopted valuations were upon a sixty per cent basis when the law in force in 1914 and 1915 required a fifty per cent basis.

The cause is remanded with instructions to the trial court to modify the judgment in accordance with this opinion.

, CHADWICK, MAIN, and PARKER, JJ., concur.